695 P.2d 838

**Yolanda Yvonne BLAKE,**
**Petitioner-Appellant-Cross-Appellee,**

v.

**Michael Herbert BLAKE,**
**Respondent-Appellee-Cross-Appellant.**

Nos. 7375, 7384.

Court of Appeals of New Mexico.

Jan. 24, 1985.

James E. Snead, Steven L. Tucker, Francis J. Mathew, Charles A. Purdy, Jones, Gallegos, Snead & Wertheim, P.A., Santa Fe, for petitioner-appellant-cross-appellee.

David H. Kelsey, Sanford H. Siegel, Atkinson & Kelsey, Albuquerque, Sarah M. Singleton, Santa Fe, for respondent-appellee-cross-appellant.

## OPINION

BIVINS, Judge.

Plaintiff Yolanda Yvonne Blake appeals from a Supplemental Decree of Dissolution of Marriage entered August 11, 1983 disposing of the issues of child custody, child support, alimony, division and distribution of the community property and debts, and attorney fees. A final decree dissolving the marriage had previously been entered on April 25, 1983.

In her appeal wife claims trial court error as follows: (1) in denying wife discovery of the books and records of a closely held corporation in which husband has an interest; (2) in allowing the introduction of certain documentary evidence; (3) abuse of discretion in the terms provided for child support, alimony, and division of property; (4) in refusing to award wife attorney fees; (5) in determining that wife had no interest in husband's bonus for the fiscal year ending July 31, 1983; and (6) in awarding joint custody of the minor children. In his cross-appeal husband contends lack of evidence to support a finding of a community interest in certain real estate he claims as his separate property. We reverse in part and affirm in part.

This case involves substantial property interests, including community and separate holdings of husband. Wife entered the marriage with no separate estate and acquired none except for stock given her by husband's parents and gifts husband made to her during the marriage. The parties married in 1967, and had four children ranging in age from nine to thirteen. They separated in May, 1980 and wife filed her petition to dissolve the marriage in November of that year. During the almost three years from filing until entry of the supplemental decree the parties engaged in extensive discovery, including interrogatories, motions to produce and depositions. Each party received in excess of $300,000 worth of community property; however, a substantial portion of each spouse's share was set apart for child support. The court awarded wife alimony of $9,000 payable monthly over three years.

## WIFE'S APPEAL

### 1. Discovery of the books and records of TSV

#### (a) Background

Husband personally controls 26% of the stock of Taos Ski Valley, Inc. (TSV) and, together with other members of the Blake family, controls 75% of the outstanding shares of the company. At all times material husband served on the board of directors of TSV as well as its executive committee. The corporation employed him as its vice-president and general manager.

Because husband's answers to the initial set of interrogatories set his monthly net income at $1,241 with no exception of any bonus for 1981, wife claims she agreed to temporary support of $1,000 a month with husband to pay the mortgage on the residence, plus gasoline for her car. Subsequently, and in response to a motion to produce, wife received copies of all federal income tax returns filed since the parties' marriage. These returns reflected that husband's earnings from TSV increased in each year from 1975 to 1980. His annual earnings included a bonus. In the spring or early summer of 1982, when wife received a copy of the 1981 tax return, she noted a marked decrease in earnings from the previous year's high of $102,950 to $52,573 in 1981. Because husband's duties had not diminished, wife contends the filing of her petition for dissolution of the marriage offers the only plausible explanation for this dramatic reduction in earnings.[1]

This new information prompted wife to file a second set of interrogatories with request for production "relating to the affairs of the family corporation." The requested documentation included a demand for copies or the right to inspect TSV tax returns since the date of marriage, the corporate minute book for the same time period, the stock register book, financial statements for five years past, cash receipts and disbursements journals with supporting documentation for the past five years, and the payroll journal. Husband responded to the interrogatories but, as to the corporate books and records of TSV, he claimed to have no "possession, custody or control."

Wife filed a motion to compel discovery and to set temporary support. A hearing on this motion was vacated when husband agreed to increase support and to furnish the requested corporate records.

When wife failed to receive the corporate books and records she filed a second motion to compel, to which husband responded claiming wife's request included documents bearing no relation to these proceedings, and that he had already provided all relevant documents relating to his financial situation, including some records of TSV. Husband claimed that the president of TSV had declined to turn over the requested documents on instructions from non-Blake family directors and officers because of the "extensive and unreasonable demand" and the costs involved.

Following a hearing held in April, 1983, the trial court found that husband did not have "custody, possession or control" of the books and records of TSV, that TSV had declined to make its books and records available, and that wife's motion should be denied. *See* NMSA 1978, Civ.P.R. 37 (Repl. Pamp.1980).

Because wife owned thirty-five shares of TSV in her own name, she instituted a separate shareholder's suit to exercise her rights under NMSA 1978, Section 53–11–50 (Repl.Pamp.1983) (providing for examination of records). When she realized that this suit would not be heard before trial in the divorce proceedings, wife then issued a subpoena duces tecum to John A. Mitchell, president of TSV, directing him to appear for a deposition and to bring with him certain books and records of the corporation. TSV objected to the subpoena and moved to have it quashed. NMSA 1978, Civ.P.R. 45(b) (Repl.Pamp.1980). Wife

---

1. At a pretrial hearing held in April, 1983 husband testified that the decrease in bonus had nothing to do with the divorce proceeding and was due solely to economic factors relating to a poor ski season and inflation. The president of TSV corroborated this explanation.

moved to compel production under Civ.P. Rule 37. Following a hearing held in June, 1983, the trial court quashed the subpoena duces tecum.

On appeal wife contends that the trial court abused its discretion in denying her access to records that would have verified or disproved husband's representations concerning his earnings and earning capacity.

In addition to the sudden drop in earnings, wife points to evidence developed on cross-examination that husband maintained at one time during the marriage a savings and checking account under his former name, Michael H. Block. Husband admitted he had not previously disclosed the existence of these accounts in his answers to interrogatories. Further, on cross-examination husband discussed interest-free loans he had received from TSV which he repaid at the time he received his year-end bonus. These factors were sufficient, according to wife, to raise a suspicion that earnings had been concealed.

Both sides appear to agree that abuse of discretion is the proper standard of review and may occur only when the trial court bases its decision on an erroneous conclusion of law or where no rational basis can be found for the ruling. *In re Coordinated Pretrial Proceedings, Etc.*, 669 F.2d 620 (10th Cir.1982). We do not consider any rights wife might have, as a shareholder of TSV, to examine the records under Section 53–11–50.

**(b) General considerations**

In New Mexico we have no cases dealing specifically with close-corporation discovery in a matrimonial proceeding. In this type case, the trial court faces at least two competing considerations. On the one hand, the trial court must consider the requesting party's need for information to adequately present his or her case, coupled with the court's obligation to make an informed decision. On the other hand, the corporate entity itself as well as its shareholders have a legitimate interest in the privacy of their business affairs and the right to be free from unreasonable harrassment, disadvantage and expense.

Cases which have denied discovery in circumstances similar to those here, have done so because of the need, in some circumstances, to protect privacy. *Rifkind v. Superior Court of Los Angeles County*, 123 Cal.App.3d 1045, 177 Cal.Rptr. 82 (1981); *see Wells v. Wells*, 108 Misc.2d 501, 437 N.Y.S.2d 622 (1981); *Borg v. Borg*, 32 Ill.App.3d 1075, 337 N.E.2d 391 (1975); *In re Coordinated Pretrial Proceedings, Etc.* Requests for discovery similar to those here have also been denied on the grounds of insufficient specificity of the request. *Melnick v. Melnick*, 85 A.D.2d 531, 444 N.Y.S.2d 649 (1981); *see Mari v. Strater*, 91 A.D.2d 579, 457 N.Y.S.2d 73 (1982); *Roussos v. Roussos*, 106 Misc.2d 583, 434 N.Y.S.2d 600 (1980). Similar to the "specificity" reasoning is the reasoning that discovery should be denied if a request is speculative and discovery would amount to a mere "fishing expedition." *Quick v. Quick*, 305 N.C. 446, 290 S.E.2d 653 (1982); *Borg v. Borg*. If it appears that the party requesting discovery has already been granted sufficient information, discovery might be denied. *Borg v. Borg*.

We recognize, as did the court in *Merns v. Merns*, 185 N.J.Super. 529, 449 A.2d 1337 (1982), the need for broad and liberal discovery in matrimonial actions. *See United Nuclear Corp. v. General Atomic Co.*, 96 N.M. 155, 629 P.2d 231 (1980). A different rule would hamper the trial court's ability to fulfill its duties. *See Gerson v. Gerson*, 148 N.J.Super. 194, 372 A.2d 374 (1977); *Fox v. Fox*, 96 A.D.2d 571, 465 N.Y.S.2d 260 (1983); *Frankel v. Frankel*, 89 A.D.2d 654, 453 N.Y.S.2d 265 (1982). The corporate form should not be used as a shield behind which parties can conceal assets or earnings. *Gerson*. "Manipulation would be too tempting." *Merns*, 449 A.2d at 1338. Here the husband and TSV both sought and successfully obtained what amounted to protective orders. Did the trial court err in granting those orders?

Because we find error in quashing the subpoena duces tecum directed to Mr. Mitchell, we need not reach the issue as to whether the trial court erred in refusing to compel husband to produce the corporate book and records.

### (c) The Subpoena Duces Tecum

In quashing the subpoena duces tecum served on Mr. Mitchell, president of TSV, the trial court ruled, first, that wife's motion to compel was erroneously filed under Civ.P. Rule 37 when it should have been filed under Civ.P. Rule 45. Second, the trial court did not believe it could rule on the various items listed in the subpoena individually or act as a settling court where the request was overly broad. So ruling, the trial court determined the subpoena unreasonable and oppressive and therefore quashed it.

■ We first consider the procedural ruling. We agree that wife's motion to compel filed under Civ.P. Rule 37 was inappropriate. Civ.P. Rule 45 provides the mechanics for invoking a ruling by the trial court on behalf of either the party subpoenaed or the party in whose behalf the subpoena is issued. Because TSV filed objections, the matter was properly before the trial court. We now turn to the question of whether the trial court erred in determining the subpoena unreasonable and oppressive.

■ The trial court ruled that it could not act as a settling court where the request was overly broad.[2] It said, "The Court agrees that at this stage it has to, in effect, affirm the subpoena as it is, or quash it as it is, becuase [sic] there's no middle ground. And the Court, incidentally, philosophically, is not a settling Court." We disagree. TSV objected on the grounds that the materials covered by the subpoena were not relevant to the divorce proceedings, and that the materials were voluminous and located at different places. This was a proper objection since Civ.P. Rule 45(d)(1) makes the subpoena subject to NMSA 1978, Civ.P.Rule 26(B) (Repl.Pamp. 1980). Civ.P.Rule 45(d)(1) further provides that, "... the subpoena will be subject to the provisions of Subsection (C) of Rule 26 and Subsection (b) of this Rule 45." NMSA 1978, Civ.P. Rule 26(C) (Repl.Pamp. 1980) deals with protective orders and provides alternatives short of an absolute bar to discovery in order to protect a party or person from annoyance, embarrassment, oppression or undue burden of expense. Similarly, Civ.P.Rule 45(b) permits the trial court to modify the subpoena if it is unreasonable or oppressive.

■ Before the trial court can enter a protective order, or modify the subpoena, there must be some showing that it is unreasonable and oppressive. That burden rests upon the party seeking to quash, here TSV. *United States v. 25.02 Acres of Land, Douglas County, Colo.,* 495 F.2d 1398 (10th Cir.1974). No evidence was presented at the June 23, 1983 hearing; only argument of counsel. Even if the subpoena alone could be considered as overly broad and a "shot-gun" approach to discovery, *see Mari v. Strater;* still the trial court should have required specificity

---

2. The Subpoena Duces Tecum required the witness to bring:

 1. The stock register and minute book of Taos Ski Valley, Inc. for the past 10 years.

 2. The general ledgers maintained by the corporation for the last 5 years.

 3. The disbursement journals maintained by the corporation for the last 5 years.

 4. The payroll journals maintained by the corporation for the last 5 years.

 5. The accounts receivable ledgers maintained by the corporation for the last 5 years.

 6. The accounts payable ledgers maintained by the corporation for the last 5 years.

 7. The payroll tax returns setting forth the salary of the corporation's officers and managerial employees for the last 5 years.

 8. The five most recent U.S. Corporate Income Tax Returns for Taos Ski Valley, Inc.

 9. All audited and unaudited financial statements prepared for Taos Ski Valley, Inc. for the period beginning January 1, 1977, and ending June 8, 1983.

 10. All documents pertaining to any profit sharing for pension plan and relating to Michael Herbert Blake for the period beginning January 1, 1977, and ending June 8, 1983, including statements of account for Michael Herbert Blake.

from wife and then provided appropriate conditions as authorized under Civ.P.Rule 26(C).

 We note that when the trial court asked if there was not a middle ground, TSV's president expressed his willingness to provide relevant information but wanted the records redefined according to need. By the silence of her counsel, wife apparently took an all or nothing position. The trial court then quashed the subpoena. While we disapprove of the failure of wife's counsel to assist the trial court,[3] nevertheless, this will not justify a foreclosure of discovery without exploring available avenues that would allow discovery while protecting against annoyance, oppression and the like. We repeat the policy which favors liberal discovery. *Griego v. Grieco*, 90 N.M. 174, 561 P.2d 36 (Ct.App. 1977). "Until the extent of the property of the community has been determined, the trial court was in no position to make a fair and just division." *Otto v. Otto*, 80 N.M. 331, 455 P.2d 642 (1969). That statement applies also to other issues involved in a divorce proceeding, including earnings and earning capacity.

 We hold that the trial court erred in not seeking an alternative to quashing the subpoena. On remand, if TSV believes that any of the requested books or records contain privileged or confidential information, it must carry its burden of making that known to the court. In any event, the applicable rules offer options that will provide a middle ground that will allow wife access to the information she needs and at the same time protect TSV from unreasonable harassment, disadvantage or expense.

 Production of books and records of TSV shall be limited to husband's earnings and earning capacity. After completion of that discovery, the trial court may conduct a hearing and receive additional evidence resulting from the production of records as relates to husband's earnings and earning

capacity. To the extent that such evidence may affect any or all issues resolved, the trial court is at liberty to revise its decision or make new findings and conclusions.

Because this matter must be remanded and in order to avoid further litigation, we discuss the remaining issues based on the record before us. We do not consider whether or to what extent additional discovery may affect these issues, leaving that to the trial court to determine. As noted, any additional discovery is to be limited to husband's earnings and earning capacity.

## 2. Propriety of admitting documents into evidence which had not been made available during discovery

At trial, wife objected to the admission into evidence of fifteen exhibits offered by husband to trace claimed separate funds into assets purchased during marriage. Wife says none of the exhibits were made available before June 30, 1983, and most were not produced until July 6, 1983, on the morning the trial began. Claiming "trial by ambush," wife argues that husband should be prohibited from introducing any evidence of his separate property claims other than what he produced during discovery, citing Civ.P. Rule 37(B)(2)(b).

 Wife fails to analyze the exhibits or for that matter describe how she was prejudiced by their introduction into evidence. *Compare State ex rel. State Highway Department of New Mexico v. Branchau*, 90 N.M. 496, 565 P.2d 1013 (1977), where prejudice was shown in permitting landowner's expert to testify even though not listed in the pretrial order. Here no prejudice has been shown. As a matter of fact six of the exhibits relate to the Des Montes property, claimed by the husband as his separate property, which the trial court found to be a community asset. Absent a showing of prejudice, we will not find abuse of discretion.

---

**3.** The trial court stated it did not find it necessary to consider other objections and this may have accounted for counsel's not offering to seek a middle ground.

**362**

■ Even if wife could demonstrate prejudice, the proposed sanction under Civ. P.Rule 37 would not be appropriate because husband did not violate any order to provide discovery. *See Bellamah Corp. v. Rio Vista Apartments*, 99 N.M. 188, 656 P.2d 238 (1982).

This point is without merit.

### 3. Claimed abuse of discretion in the terms trial court provided for child support, alimony, and division of property

Under this point wife argues that in deciding three interrelated matters, the trial court abused its discretion. She claims any one of the three considered alone constitutes an abuse of discretion, but when considered together, the cumulative effect demonstrates "extraordinary unfairness to the wife."

#### (a) Funding the trust for child support

The first claimed error involves the manner in which the trial court funded a trust for child support. The trial court ordered the liquidation of seventy shares of TSV stock (thirty-five owned by each party as separate property), valued at $70,000, and their community residence at Ranchitos, valued at $330,000. It then ordered the proceeds from the sale of the stock and residence invested in tax-free municipal bonds, to be owned equally by the parties, and held by a custodian appointed by the trial court. The objective was to attain $6,000 per child per year, or as close to that figure as possible. As each minor attains age eighteen or is sooner emancipated, bonds for the support of that child shall be returned to the parties in equal shares. Of course, when the youngest or last surviving child becomes emancipated, husband and wife will have restored to them the full benefits of the assets committed to this trust. NMSA 1978, Section 40–4–14 (Repl. Pamp.1983) authorizes this type plan. *See also* NMSA 1978, § 40–4–7(B) (Repl.Pamp. 1983).

Wife does not argue against the concept of this novel and creative method of provid-

ing for child support; rather she challenges the funding of the trust. Wife contends the trial court abused its discretion in requiring equal shares when a significant disparity exists between the parties' respective earnings and net worth. While recognizing that the mother's obligation for support is no different from that of the father, wife contends that a dollar-for-dollar contribution as compared to an equally proportionate contribution is not only unfair, it undercuts the best interests of the child. In other words, wife says that to limit the contribution of the wealthier parent to that of the poorer parent deprives the child of total resources available upon dissolution of the marriage. Moreover, she claims it ignores the significantly greater contribution imposed on her as the parent having primary physical custody of the children.

The answer to this argument requires a consideration as to the adequacy of the child support as established, and the respective financial resources of the parents after portions of their properties have been set apart for the maintenance and education of their children.

NMSA 1978, Section 40–4–11 (Repl. Pamp.1983) provides that in determining liability for child support the trial court shall consider "the financial resources of the parent...." *Spingola v. Spingola*, 91 N.M. 737, 580 P.2d 958 (1978) states that this section is mandatory and requires that evidence of current financial resources be fully considered by the court and that a finding be made on that evidence. Wife argues this was not done and the trial court's refusal was "arbitrary, capricious, and beyond the bounds of reason."

■ Our review of the record satisfies the inquiry that $6,000 a year for each of the children is supportable by the evidence, given the resources of the parties. The trial court considered the private schooling and activities in which the children had been involved in arriving at that figure. The trial court carefully followed the directive of *Spingola* in providing advan-

tages within reason. The *Spingola* court said, "This does not mean providing 'luxuries or fantastic notions of style ... not normal for the stable, conservative, natural upbringing of a child....'" *Id.* at 743, 580 P.2d 958.

As to the financial resources of the parties, we examine their respective assets and earnings or earning ability. Each party received in excess of $300,000 in community property. After deducting one-half of the value of the Ranchitos residence, wife will have approximately $150,000. On the husband's side, he has separate assets which widen the gap between his resources and that of wife. The parties disagree as to value of husband's separate estate and an exact approximation is not possible since the trial court did not place a value on all of husband's separate property. As to the separate property that was valued, or as to which there is no dispute, husband's separate estate approximates or exceeds $500,-000. In addition, husband owns as his separate property an interest in a partnership which wife claims should be valued at a minimum of $1.2 million, while husband contends this interest is worth approximately $65,000.

With regard to earnings, the trial court found that husband had a dependable net monthly income of approximately $3,700. Wife does not work out of the house, and therefore, has no present earnings. Based on her earning potential, as found by the trial court, she would not likely earn close to what husband does.

 Because the setting apart of a portion of each spouse's property and the creation of the custodial trust are authorized by Sections 40–4–7 and 40–4–14, the trial court did not abuse its discretion in establishing the trust for maintenance and support of the minor children. Moreover, the facts support the arrangement. The trial court found the parties lived up to or beyond their means. Wife admitted she could not manage money very well. Husband's fixed salary is relatively moderate and his bonus income is subject to the vagaries of the weather. That the trial court properly applied the law does not fully answer the question. While a dollar-for-dollar contribution may be appropriate in some cases, each case having to be decided on its own merits, we are unable to say that the facts here rationally support that result. First, *Spingola v. Spingola* requires that the financial resources be considered and that findings be made thereon. While it is clear that the trial court considered the existence of husband's separate properties, no findings were made as to the value and income producing potential of all of these assets. In order to consider the resources of the parent and make an assessment for child support, the trial court must have all the facts available.

Because of the lack of findings as to all of husband's resources, including earning potential, we must remand for further consideration of this point. We answer other questions raised by wife concerning the propriety of the trust insofar as it requires utilization of her assets.

Relying in *Hertz v. Hertz*, 99 N.M. 320, 657 P.2d 1169 (1983), wife claims that in establishing the custodial trust, the trial court abused its discretion in denying her "complete and immediate control" over her share of the former community residence. She claims that because no evidence shows husband would be unable to pay monthly child support out of his earnings, the trial court's order effectively divests her of her share of the equity in the community residence. Wife contends the $9,000 in alimony is wholly insufficient to compensate her for this deprivation.

The plan for child support does not deprive wife of her interest in community property; it requires conversion of non-income producing assets into an income-producing asset for the benefit of the children. Section 40–4–7(B)(3) and Section 40–4–14 authorize this.

*Hertz* held that a payout by husband to wife for her community interest in the residence denied her "complete and immediate control" over her share where there was no showing that the husband was unable to pay wife immediately. *See Chrane v.*

*Chrane,* 98 N.M. 471, 649 P.2d 1384 (1982) (error to allow spouse use of home until she dies or remarries). Those cases are distinguishable. We are not concerned with giving an advantage to one spouse at the expense of the other spouses. Here the interest of both spouses was set apart for the children.

Wife also argues that she should not have to sell her share of the remaining community property in order to supplement the amount allowed her to meet living expenses of herself and her children. *See Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980). In that case the supreme court held that $1,000 a month was insufficient. *Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981), overruled *Hurley* to the extent that it precluded any consideration of the community property awarded a spouse in reaching an equitable award of alimony. Again, the setting apart of a portion of each parties' property for child support does not result in an exhaustion for living expenses. The corpus is preserved; only the income is put beyond the reach of the parties, at least until each child is emancipated. The question is not whether this can be done, but whether it was done properly in this case.

**(b) Alimony**

The trial court concluded that:

The Court should award, as a single sum, alimony of $9,000, the same to be paid by Mickey Blake in thirty-six non-interest bearing installments of $250 each.

Claiming abuse of discretion as to the amount of alimony, wife contends that the trial court failed to consider the lifestyle of the parties during marriage, it failed to consider the income productive nature of the assets awarded wife, and even if these requirements were met or do not apply, wife says the amount was so unreasonably low, with regard to rehabilitative needs alone, as to constitute an abuse of discretion.

Whether or not to award alimony rests within the sound discretion of the trial court, and this court will alter that decision only on a showing of abuse of discretion. *Ellsworth; Hertz.*

■ Factors to be considered in determining whether to award alimony and, if awarded, the adequacy of the amount, include the wife's needs, her age, health and means she has available to support herself, the husband's earning capacity, the duration of the marriage, and the amount of property owned by each party. *Michelson v. Michelson,* 86 N.M. 107, 520 P.2d 263 (1974); *Hertz; Ellsworth; Hodges v. Hodges,* 101 N.M. 67, 678 P.2d 695 (1984).

■ Here we have a thirty-seven-year-old woman, in good health and as the trial court found "possessing assets by way of a reasonably good liberal arts education, high intelligence with a pleasing and considerate personality, and entree to the more important social and financial circles in the community." The trial court also found the wife "currently employable." Wife received property over and above the assets set aside for the children having a value of approximately $150,000. The trial court no doubt considered the income producing potential of this property or the proceeds, if sold, as well as the other awards made. For this thirteen-year marriage, we are unable to say that the trial court abused its discretion in the amount awarded wife.

■ We are satisfied that the trial court carefully considered the parties' previous lifestyle. It found, "Mickey and Yolanda Blake consistently have lived up to or beyond their means." Consideration of the wife's needs does not require a lavish lifestyle, even though the parties may have pursued such during their marriage.

■ With regard to wife's rehabilitative needs, wife provides us with no evidence of any real desire to rehabilitate herself. In *Lovato v. Lovato,* 98 N.M. 11, 644 P.2d 525 (1982), the supreme court said that "a trial court must not allow a spouse to abdicate the responsibility for his or her own support and maintenance and place that upon the other." *Id.* at 13, 644 P.2d 525. Although the husband offered to pay wife

$1,000 monthly for a thirty-six month period, we do not read *Hurley* as requiring anything more than consideration of that offer.

The trial court did not abuse its discretion in the amount of alimony awarded wife.

**(c) Payout**

The trial court awarded wife, among other assets:

> The sum of $54,185, of which sum Mickey Blake should pay to Yolanda Blake upon entry of judgment herein $29,050 in cash, representing the one-half of his profit sharing plan, and of which sum Mickey Blake should pay the remainder, being a deficiency of $25,135, either in a single sum, or in equal monthly installments of $750 inclusive of interest at 7.75% per annum upon unpaid principal balances until the entire principal and interest thereon shall have been fully paid, as Mickey Blake at his option may select.

The payout represents a portion of the equalization money, and under *Cunningham v. Cunningham*, 96 N.M. 529, 632 P.2d 1167 (1981), no abuse of discretion has been demonstrated.

**4. Attorney fees**

Wife claims abuse of discretion by the trial court in refusing to award her attorney fees.

The trial court found:

> This divorce case has taken far too long to conclude; each party evidently has beleived there would be some advantage found in protracting this case; each party has emphasized, unduly it would appear, certain aspects of the case, such that it can hardly be said that the work of counsel was necessarily consumed in an effort to make an efficient preparation and presentation of the case. Yolanda Blake at no time sought an order of this court, relative to the expenses of the proceeding, as would assure her an efficient preparation and presentation of her

> case. Both parties have the funds to pay for the work of their attorneys done in accordance with the emphasis prescribed by that party. Payment by each party of his attorney fee will not deprive him of subsistence or the children of support.

This case was filed in November, 1980 and the supplemental decree was entered in August, 1983, almost three years later. Much of that time was consumed with discovery. Almost four hundred pages of the district court records relate to interrogatories (multiple sets propounded by each side to the other totalling close to 300 questions), answers to interrogatories, supplemental answers, motions for production, responses, objections, and orders on hearings previously discussed. The trial court probably failed to see the need for such extensive discovery for the efficient preparation of the case. Nor do we.

Where neither wife nor husband is economically oppressed, trial court may in its discretion require each side to bear his and her own attorney fees. *Allen v. Allen*, 98 N.M. 652, 651 P.2d 1296 (1982); *Corliss v. Corliss*, 89 N.M. 235, 549 P.2d 1070 (1976). The record supports the trial court's finding that the parties have the funds to pay their respective counsel.

We find no abuse of discretion.

Wife also asks for attorney fees on appeal. Considering the relative success in this appeal together with resources available to her, we award $4,000 to wife as her attorney fees on appeal.

**5. Wife's interest in 1983 Bonus**

At the time of the hearing husband had not received his bonus for 1983, but estimated it would be about $45,000. Wife contends that the trial court erred in determining that wife had no interest in the expected bonus.

Because husband argued at trial that wife should receive no interest in the bonus because husband was "pre-paying" that to her by way of temporary support during 1983, wife premises her argument on that theory.

Wife refers us to paragraph N of the Supplemental Decree of Dissolution of Marriage which provides:

Following separation, Mickey Blake expended the community income for support of the family and to pay community expenses.

She then states that this "finding" apparently furnished the factual predicate for the following conclusions of law of the trial court's Decision:

10. Wife has no claim to Husband's community earnings or income from the date of their separation.

11. Wife has no claim to the bonus anticipated to be received by Husband after July 31, 1983 from Taos Ski Valley, Inc.

From this wife forcefully argues that the trial court could not offset the temporary support she and the children received against her community interest in the 1983 bonus payable July 31, 1983. Wife claims that since the parties were not divorced until April 25, 1983, she is entitled to one-half interest to at least three-quarters of the bonus. Absent any proof that husband borrowed against his bonus to pay the temporary support, we might be inclined to agree with wife's argument; however, wife premises her argument on a nonfinding.

The trial court filed its Decision on July 27, 1983 which contains the court's findings of fact and conclusions of law. This carefully drawn decision complies with NMSA 1978, Civ.P. Rule 52 (Repl.Pamp.1980). In it the trial court found:

56. During the course of this case, and in determining Husband's dependable monthly net income, the court has included Husband's anticipated year-end bonus, and further *has considered such bonus in connection with child support, alimony and division of property set forth in the conclusions of law hereinbelow,* and finds that inclusion of bonus within regular monthly net income of Husband is necessary to arrive at an ordered disposition in this case. (Emphasis added.)

▇ In the same Decision the trial court concluded that wife had no claim to the anticipated bonus (see conclusion number 11 set out above). Wife resorts to paragraph N of the Supplemental Decree of Dissolution of Marriage filed August 11, 1983, which does not appear in the Decision. It is the decision containing the trial court's findings of fact that we must look to in order to find support for its conclusion of law. The decision of the trial court constitutes the factual and legal basis for the judgment. *University of Albuquerque v. Barrett*, 86 N.M. 794, 528 P.2d 207 (1974).

▇ "It is fundamental that a judgment cannot be sustained on appeal unless the conclusion upon which it rests finds support in one or more findings of fact." *Thompson v. H.B. Zachry Co.*, 75 N.M. 715, 716, 410 P.2d 740 (1966) (citations omitted). The conclusion that wife has no claim to the 1983 bonus finds support in the finding that the trial court considered the bonus in connection with, among other things, the division of property. We note, however, that from a review of the decision we are unable to determine just how the 1983 bonus was considered in dividing the community property.

▇ Since this case must be remanded for retrial, we will not speculate on how the trial will handle the bonus which, if paid on or after July 31, 1983, can now be ascertained as to amount. We only point out that any division of the bonus should take into consideration the tax consequences. *Cunningham v. Cunningham.*

## 6. Joint custody

Wife argues abuse of discretion in awarding joint custody, claiming the parties never agreed to this arrangement, that the deep divisions between the parties makes the arrangement improbable, and that the evidence shows little involvement and interest on the part of the husband in the development of the children and, by contrast, wife's dedication toward that end.

▇ Wife then follows with a discussion of the law without providing us with the substance of all evidence bearing on

her attack. The trial court found that the children enjoyed a good relation with both parents; that both parents were fit parents; that the children have a good relationship with the grandparents on both sides; and that the children are well adjusted in all respects. If a party contends that a finding is not supported by substantial evidence, he must set forth the substance of all evidence bearing in that proportion. NMSA 1978, Civ.App.R. 9(d) (Repl.Pamp. 1984); *State ex rel. Thornton v. Hesselden Construction Co.,* 80 N.M. 121, 452 P.2d 190 (1969). This wife failed to do.

 NMSA 1978, Section 40–4–9.1 (Repl.Pamp.1983) states that in any proceeding in which custody of a minor child is at issue, the court should first consider an award of joint custody if it is in the best interests of the minor. *See Strosnider v. Strosnider,* 101 N.M. 639, 686 P.2d 981 (Ct.App.1984). In light of the legislative policy and the unchallenged findings, we hold that there was no abuse of discretion in awarding joint custody.

**HUSBAND'S CROSS–APPEAL**

The Des Montes real estate, containing approximately 23.513 acres and valued at $220,000, forms the basis of husband's cross-appeal. Husband contends the trial court erred in finding that husband intended to make a gift to wife of a community interest in this property. He asks that we consider this issue only if "any of the property distribution or alimony provisions are held to be in error." Because we find error with respect to the funding of the trust for child support, we consider husband's cross-appeal.

The trial court found that husband paid the full purchase price of $25,000 for Des Montes out of his separate funds at the time of purchase in 1972. The deed showed title to husband and wife "as joint tenants." The trial court further found that while husband deliberately had title conveyed to himself and wife, he did not know until the divorce that the conveyance was in joint tenancy. As to wife, the trial court found she did not know the nature of

the holding. The trial court found that "[h]usband intended at the time of purchase to make a gift to Wife of a community interest in the Des Montes real estate."

Because his separate funds were used to purchase the Des Montes property, husband argues that this real estate is his separate property unless wife can prove a transmutation by clear, strong and convincing proof. *Allen v. Allen.* Husband contends wife failed to meet that difficult burden.

Wife recognizes that *Allen v. Allen* holds that the fact of the deed in the name of the parties as grantees does not alone establish transmutation, nor does the passing of funds through a joint account, as was the case here. *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969). She contends, however, those facts coupled with wife's initial search for the property, her participation in the negotiations, and husband's listing himself and wife as co-owners on a credit application shortly before initiation of the divorce proceeding satisfies the heavy burden.

 We disagree. *See Allen v. Allen; Cf. Nichols v. Nichols,* 98 N.M. 322, 648 P.2d 780 (1982). Husband testified that he never intended to make a gift to wife of any interest, and purchased the property as an investment. There was never any discussion as to the preparation of the deed, the conveyance having been prepared by the title company. Husband did not know title was in joint tenancy until the divorce proceedings. Wife's proof does not establish a transmutation. *See In re Trimble's Estate,* 57 N.M. 51, 253 P.2d 805 (1953).

 The fact that a transmutation from separate to community property has not been established does not, however, answer the inquiry. Title takes its status at the time and by the manner of acquisition. *See Allen v. Allen.* Here title was taken by the parties as joint tenants. We are not concerned with transmutation or the burden of proof to establish it as announced in *In re Trimble's Estate.* We are concerned with the effect of NMSA 1978, Section

47–1–16 which applies because title was taken in joint tenancy.

Section 47–1–16 provides:

An instrument conveying or transferring title to real or personal property to two or more persons as joint tenants, to two or more persons and to the survivors of them and the heirs and assigns of the survivor, or to two or more persons with right of survivorship, shall be prima facie evidence that such property is held in a joint tenancy and shall be conclusive as to purchasers or encumbrancers for value. In any litigation involving the issue of such tenancy a preponderance of the evidence shall be sufficient to establish the same.

■■■■■ In *Estate of Fletcher v. Jackson*, 94 N.M. 572, 613 P.2d 714 (Ct.App. 1980) we said that Section 47–1–16 applies in determining whether the initial legal status of the property is held in joint tenancy. A joint tenancy deed does no more than provide prima facie evidence that the property is held in that status in the absence of other evidence. *Estate of Fletcher.* The quantum of proof necessary to either rebut or sustain the prima facie evidence of joint tenancy is preponderance of the evidence, not clear, strong and convincing proof. *Estate of Fletcher.*

■■■■■ The supreme court applied these principles in *Ohl v. Ohl*, 97 N.M. 175, 637 P.2d 1230 (1981). *See also Corley v. Corley*, 92 N.M. 716, 594 P.2d 1172 (1979). In *Ohl* the supreme court affirmed a finding of no joint tenancy. The problem in the case before us is that the trial court did not make a determination as to whether the Des Montes was held in joint tenancy; it found the wife acquired a community interest through gift from husband at the time of purchase. To reach that finding would require a change in the legal status through transmutation. Since a prima facie showing of wife's interest was made by the deed itself, the proper inquiry then is not whether a transmutation took place, but whether the proof offered by both parties sustained or rebutted the prima facie evidence of joint tenancy. The burden here would be on husband since he is claiming a separate property interest. That burden may be met by a preponderance of the evidence. *Estate of Fletcher.*

■■■■ Because a determination of joint tenancy has not been made, we must remand since it is for the trial court to make the determination. *Ohl.* If the trial court determines wife has a joint tenancy interest, the result would be essentially the same as the finding of a community interest, at least for the purpose of dividing the property as was done here. *See* NMSA 1978, § 47–1–36 (defining joint tenancy). On the other hand, if the trial court finds no joint tenancy then the Des Montes property will belong to husband as his separate property. Such a finding would necessarily implicate the disposition of other issues; therefore, in resolving this issue, the trial court may make whatever adjustments as necessary to achieve a fair and equitable division and disposition of the parties' property and other interests.

**CONCLUSION**

We set aside the supplemental decree entered August 11, 1983 and remand for further proceedings consistent with this opinion. Husband shall pay wife's attorney fees on appeal of $4,000 plus applicable tax and costs of appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and NEAL, J., concur.