713 P.2d 1017

**Beverly I. BERRY, formerly Beverly I.
Meadows, Petitioner-Appellant,**

v.

**Willie v. MEADOWS,
Respondent-Appellee.**

**No. 8237.**

Court of Appeals of New Mexico.

Jan. 7, 1986.

Sandra Morgan Little, Atkinson & Kelsey, P.A., Albuquerque, for petitioner-appellant.

Jerome D. Matkins, Matkins & Davis, Carlsbad, for respondent-appellee.

## OPINION

DONNELLY, Chief Judge.

Wife appeals from the trial court's order dismissing her petition to divide previously undivided community property interests in her former husband's military retirement and his retirement from the Potash Company of America (PCA). There are five issues: (1) whether substantial evidence exists to support the trial court's finding of an oral agreement for disposition of military retirement benefits; (2) failure of trial court to divide wife's interest in the PCA retirement; (3) whether the statute of limitations or laches bars wife's right to past military retirement benefits; (4) wife's right to future military retirement benefits; and (5) wife's right to attorney's fees. Reversed and remanded.

The parties were married from 1952 to 1977, with the exception of a three-month period in 1963, during which husband and wife were divorced and then remarried. Husband served in the military service from 1951 to 1972, when he retired with twenty-one years of credit. The parties were divorced on November 14, 1977, in Eddy County, New Mexico. At the time of the divorce, husband received a net monthly military retirement payment of $524.00 per month. On January 31, 1984, at the time of the hearing wife's petition to divide additional assets, husband's net monthly military retirement payment was $772.00.

In 1973, after his discharge from the military in May, 1972, and prior to the divorce of the parties, husband began to work for PCA. The PCA retirement vests after ten years of employment, but retirement benefits do not mature until the employee attains sixty-five years of age. At the time of the divorce, husband was not receiving PCA retirement.

In his petition for divorce, husband alleged that his military retirement benefits and the PCA retirement were community property. Husband and wife, through their respective counsel, entered into a written marital settlement agreement. However, no express reference was made in the settlement agreement to either the PCA or military retirement benefits. In *Pacheco v. Quintana,* Ct.App.No. 8181 (Filed December 23, 1985), we rejected wife's argument that military retirement benefits had not previously been divided and were now subject to division. While *Pacheco* was in part similar to the instant case, the property settlement agreement in *Pacheco* compelled a different result. The parties in *Pacheco* agreed that husband would retain the balance of the community property, mutually released each other from further claims and agreed that the division was a full and complete settlement. In the present case, retirement benefits were not previously divided.

On July 11, 1983, wife filed a petition in the District Court of Eddy County, New Mexico, alleging that when the parties were divorced in 1977, the interests of the parties in husband's military retirement and in the PCA retirement were left undivided and that husband had been receiving military retirement pay since 1972.

Husband answered wife's petition for division of the undivided community property and admitted that the written property settlement agreement and final decree of divorce failed to divide all the interests of the parties, but alleged that since husband had had no vested right in the pension from PCA, wife was not entitled to any interest in the PCA retirement benefits. Husband denied generally that wife had any interest

in his military retirement. No affirmative defenses were expressly pled by husband in response to wife's petition.

The trial court adopted findings of fact and conclusions of law, stating *inter alia:*

3. * * * Included in [his] Petition in said divorce cause [Husband] plead [sic] the existence of possible community interests in Potash Company of America retirement plan and retirement from the United States as a result of his naval service. Answer to the Petition was duly filed by the attorney for [wife]. On November 8, 1977, [the] parties entered into a Property Settlement Agreement [in the divorce action], wherein the parties agreed as to custody of a child, child support and division of community assets and temporary alimony * * *.

4. At the time of the Agreement and entry of the Decree, both parties and their attorneys knew of the existence of the retirement benefits with the Navy and the possible existence of retirement benefits with Potash Company of America as shown by the pleadings of the record * * *.

5. Both parties and their attorneys knew of the existence of the military retirement and agreed that said retirement would be paid to [husband], as a part of their Agreement, although this matter was not mentioned specifically in the Agreement or the Decree.

6. [Wife] had full knowledge of the existence of the military retirement benefits both at the time of the Decree in November of 1977, and through the time of the filing of the Petition in this cause.

7. There was no value as to the Potash Company of America Retirement Fund at the time the parties were divorced in 1977.

The trial court concluded that wife was "barred from maintaining this action because it [the military retirement] is not a community asset that was [unknown to the parties] at the time [they] were divorced, but on the contrary was fully known to [wife] and taken into account by consent." The court also concluded that wife was barred from asserting any interest in the military retirement under the statute of limitations, laches, and waiver.

## I. SUBSTANTIAL EVIDENCE

Wife's petition for division and distribution of her interest in the undistributed community assets was based upon statutory grounds. NMSA 1978. Section 40–4–20 (Repl.Pamp.1983), provides:

The failure to divide the property on dissolution of marriage shall not affect the property rights of either the husband or wife, and either may subsequently institute and prosecute a suit for division and distribution, or with reference to any other matter pertaining thereto, which could have been litigated in the original proceeding for dissolution of the marriage.

On appeal, wife asserts that there is no substantial evidence in the record to support the trial court's finding of an express agreement between the parties of wife's relinquishment of all her rights in husband's military benefits. We agree.

Husband's petition for divorce in Eddy County alleged that the military retirement benefits were community property. The final decree of divorce entered by the court found all of the allegations of husband's petition to be true. Wife argues on appeal that the trial court could not properly consider extrinsic evidence to change the meaning of the decree, where the decree was clear and unambiguous. *See Parks v. Parks,* 91 N.M. 369, 574 P.2d 588 (1978). Husband contends that even though the divorce decree found all of the allegations of his petition to be true, including the allegation that the military retirement was community property, nevertheless the decree omitted any division of this asset. Husband implies that these facts raise an ambiguity in the decree, and consequently, to explain the ambiguity, parties should be permitted to present testimony and evidence outside the decree. *E.g., Parks v. Parks.*

■ Wife failed to assert in the trial court the argument now raised for the first time on appeal. Issues not properly raised in the trial court will not be considered on appeal. *Eichel v. Goode, Inc.,* 101 N.M. 246, 680 P.2d 627 (Ct.App.1984). In light of wife's failure to object at trial, we find no error on the part of the trial court in its consideration of extrinsic evidence concerning the existence, if any, of an agreement between the parties concerning the disposition of husband's military retirement benefits.

Husband, wife, and husband's attorney testified that, at the time of divorce, they believed the military retirement was husband's separate property. Husband also testified that the only agreement entered into between the parties during their divorce was the marital settlement agreement dated November 8, 1977, and that there were no outside agreements. Husband testified further that he was not claiming that wife had no interest in the retirement; rather, he believed that the division of property between the parties had been settled. He stated that: (1) at the time of the divorce, the parties were under the impression that the military retirement belonged to the retiree; and (2) he "believed" that his former wife did not want the retirement.

After the divorce, wife testified that she learned that under New Mexico law she was entitled to her community property share of husband's military retirement. *See Walentowski v. Walentowski,* 100 N.M. 484, 672 P.2d 657 (1983) (upholding the *LeClert* rule that military retirement is community property subject to division on dissolution of marriage); *LeClert v. LeClert,* 80 N.M. 235, 453 P.2d 755 (1969) (holding that the portion of military retirement earned during marriage became part of the community property subject to division in the divorce proceeding).

■ Even when viewed in a light most favorable to the trial court's finding together with all reasonable inferences, the trial court's finding that wife orally agreed to relinquish her interest in the retirement benefits is not supported by substantial evidence. At most there is an inference that wife and her attorney were mistaken in their belief that wife could not assert a right to husband's military retirement benefits.[1] Substantial evidence is relevant evidence which a reasonable mind might accept as sufficient to support a conclusion. *Schober v. Mountain Bell Telephone,* 96 N.M. 376, 630 P.2d 1231 (Ct.App.1980). Findings must be based upon substantial evidence, not speculation and conjecture. *Pacheco v. Martinez,* 97 N.M. 37, 636 P.2d 308 (Ct.App.1981). A judgment based upon findings unsupported by substantial evidence will not be upheld on appeal. *Henderson v. Lekvold,* 99 N.M. 269, 657 P.2d 125 (1983); *Getz v. Equitable Life Assurance Society of the United States,* 90 N.M. 195, 561 P.2d 468, *cert. denied,* 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 95 (1977).

■ Because we determine that there was no substantial evidence to support the trial court's finding that the parties orally agreed that husband should be awarded the entire community interest in the military retirement benefits, wife was not precluded from asserting her claim for this undistributed asset.

## II. PCA RETIREMENT BENEFITS

Wife contends that she is entitled to a portion of the PCA retirement, because it was not divided at the time of divorce. Husband asserts that wife is not entitled to have this asset divided, since the trial court found that there was no value to this asset at the time of the divorce and that the parties' interests in the retirement plan amounted to a mere expectancy.

At the time of trial, husband presented evidence that he had been laid off from PCA, due to a reduction in the work force. Husband began working for PCA in 1973. The parties were divorced in 1977, and husband worked for PCA for a period of four

---

1. In *Norris v. Saueressig,* Ct.App.No. 8205 (Filed December 12, 1985), this court traced the turbulent history of a spouse's interest in the military retirement benefits of a military retiree.

years during the marriage. In order for husband's PCA retirement to become vested, he would have to continue working for the company for six additional years. The PCA retirement vests after ten years of service; it matures when the employee becomes age 65. Husband argues that it is questionable whether his PCA retirement benefits will ever become vested, because economic conditions affecting the potash mining industry have caused his employer to lay him off periodically.

The issue of whether a contingent interest in a nonvested and unmatured retirement benefit, earned in whole or in part during marriage, is subject to division upon dissolution of marriage is a matter that has not been directly addressed in this jurisdiction. *Compare Copeland v. Copeland*, 91 N.M. 409, 575 P.2d 99 (1978), *modified in part*, *Schweitzer v. Burch*, 103 N.M. 612, 711 P.2d 889 (1985) (holding that vested retirement rights earned during the marriage of the parties are a community asset subject to division at time of divorce, even though husband has not yet retired).[2]

The supreme court in *LeClert v. LeClert*, anticipated a number of the arguments asserted herein and which relate to the issue of contingent interests. As observed in *Norris v. Saueressig*, *LeClert* "was one of the first decisions to recognize that an unmatured retirement could be divided as community property." *See also Ridgway v. Ridgway*, 94 N.M. 345, 610 P.2d 749 (1980) (holding that husband's vested, unmatured interest in a noncontributory profit-sharing plan, which had no ascertainable future benefit, did have a current actual value at the time of divorce and was a community asset subject to division upon divorce).

The court in *LeClert* considered and rejected the argument that a right to receive an interest in retirement benefits was not subject to allocation at the time of divorce.

On appeal, the supreme court affirmed the award, stating that:

> [P]laintiff's retirement pay to which he was to become entitled July 1, 1968 cannot be considered a mere expectancy * *. Here, plaintiff has been ordered retired. When the retirement date occurs, the pay to be received by him is in payment for services performed, partly during the marriage of the parties.

*Id.* 80 N.M. at 236–37, 453 P.2d at 756–57.

When a substantial portion of the time and labor of a spouse has been expended during marriage to obtain retirement benefits but the right in retirement benefits has not yet vested, the worker has still accrued a valuable right in a contingent benefit. W. de Funiak & M. Vaughn, *Principles of Community Property*, § 68 at 149 (2d ed. 1971).

An issue similar to that presented herein was considered by the California Supreme Court in *In re Marriage of Brown*, 15 Cal.3d 838, 126 Cal.Rptr. 633, 544 P.2d 561 (1976). There the court considered whether husband's nonvested retirement rights earned during his employment were subject to division at the time of divorce. The court overruled its prior decision of *French v. French*, 17 Cal.2d 775, 112 P.2d 235 (1941), and held:

> Although * * * courts have previously refused to allocate [a] right in a nonvested pension between the spouses as community property on the ground that such pension is contingent upon continued employment, we reject this theory. In other situations when community funds or efforts are expended to acquire a conditional right to future income, the courts do not hesitate to treat that right as a community asset. [Footnotes omitted.]

> \*    \*    \*    \*    \*    \*

The present case illustrates the point. [Husband's] pension rights, a valuable asset built up by 24 years of community

2. The court in *Copeland* defined the terms "vested" and "matured" when utilized in conjunction with retirement plans. "Vested" refers to a pension right which is not subject to forfeiture if the employment relationship terminates prior to

retirement. "Matured" means that an employee is entitled to receive benefits which he has earned throughout the years, when he is eligible to retire. *Id.* 91 N.M. at 412, 575 P.2d at 102.

effort, under the *French* rule would escape division by the court as a community asset solely because dissolution occurred two years before the vesting date. If, as is entirely likely, [husband] continues to work for General Telephone Company for the additional two years needed to acquire a vested right, he will then enjoy as his separate property an annuity created predominently [sic] through community effort. This "potentially whimsical result," as the Court of Appeals described in a similar division of community property in *In re Marriage of Peterson* * * * 41 Cal.App.3d 642, 651, 115 Cal. Rptr. 184, cannot be reconciled with the fundamental principle that property attributable to community earnings must be divided equally when the community is dissolved.

*Id.* at 846–48, 126 Cal.Rptr. at 638–39, 544 P.2d at 566–67.

The California Supreme Court reiterated the *Brown* rule in *In re Marriage of Gillmore*, 29 Cal.3d 418, 174 Cal.Rptr 493, 629 P.2d 1 (1981). The court in *Gillmore* stated: "Under California law, retirement benefits earned by a spouse during a marriage are community property, subject to equal division upon dissolution of that marriage. [Citations omitted.] This is true whether the benefits are vested or nonvested, matured or immature." *Id.* at 422, 174 Cal. Rptr. at 495, 629 P.2d at 3. *See also In re Marriage of Mastropaolo*, 166 Cal.App.3d 953, 213 Cal.Rptr 26 (1985); *Van Loan v. Van Loan*, 116 Ariz. 272, 569 P.2d 214 (1977); *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976); *Wilder v. Wilder*, 85 Wash.2d 364, 534 P.2d 1355 (1975); *Farver v. Department of Retirement Systems*, 29 Wash.App. 138, 629 P.2d 903 (1981); *DeRevere v. DeRevere*, 5 Wash.App. 741, 491 P.2d 249 (1971).

In discussing the valuation of retirement benefits in community property settlements, Nordhauser, in *The Valuation of Defined Benefit Retirement Plan Benefits in Community Property Settlements*, 9 Com.Prop.J. 299 (1982), has pointed out that:

[M]ost community property jurisdictions now agree that an employee's contingent interest in an unvested defined benefit retirement pension plan that will mature at a future date is property. Furthermore, many courts agree that despite the inchoate nature of such prospective retirement benefits, they are community property to the extent that the retirement benefits were earned during marriage.

Similarly, the court in *Cearley* observed:

While the status of military pension benefits earned during marriage is now firmly established as community property, the decisions in this and other community property States have differed as to whether the pension payments must have vested or matured before they are subject to apportionment by a divorce court, or whether future contingent payments may be apportioned "if, as, and when" they mature and are received by the retired spouse.

\*    \*    \*    \*    \*    \*

*Reliance on the date of collectibility as the inception of contingent pension rights earned during coverture was soon recognized to be inconsistent with basic community property principles.* [Emphasis added.]

*Id.* at 663. As *Hughes v. Hughes*, 96 N.M. 719, 722, 634 P.2d 1271, 1274 (1981), states: "In New Mexico, time of vesting has not been considered significant in the analysis of whether retirement benefits are separate or community property."

The PCA retirement rights accrued by husband during coverture were earned by community labor and constituted a contingent interest in retirement benefits. The fact that a PCA retirement had no value at the time of divorce is irrelevant to wife's suit to divide the parties' rights in this asset. *E.g., Hickson v. Herrmann*, 77 N.M. 683, 427 P.2d 36 (1967); *LeClert v. LeClert.* A spouse's entitlement to half of the community interest in a pension plan earned during coverture does not rest upon whether the employee's interest was vested at the time of divorce, but whether the

worker's rights in the pension constitute a property interest or right obtained with community funds or labor. *Van Loan v. Van Loan.* While rights to benefits under the retirement plan may never vest or mature due to contingencies and unforeseeable occurrences, wife was, nevertheless, entitled to have her portion of the contingent interest computed and divided.

In *Schweitzer v. Burch,* the supreme court has prospectively modified its holding in *Copeland,* to hold that at the time of divorce, unless both parties agree otherwise, the trial court must divide community property retirements on a "pay as it comes in basis," in order to better assure equity, fairness and to divide the risk equally. *Id.*

### III. APPLICATION OF AFFIRMATIVE DEFENSES TO PAST MILITARY RETIREMENT BENEFITS

█ The trial court found that wife's action for division and distribution of husband's military retirement rights was barred by the statute of limitations, waiver and laches. Husband's answer to wife's action herein did not plead the affirmative defenses of statute of limitations, waiver or laches. Wife contends it was error to award the pension plans on the basis of defenses not pled nor argued by husband, but rather raised *sua sponte* by the court.

Under NMSA 1978, Civ.P. Rule 8(c)(Repl.Pamp.1980), a party is required to expressly plead affirmative defenses. Failure to plead an affirmative defense in a responsive pleading, under NMSA 1978, Civ.P. Rule 12(h) (Repl.Pamp.1980), may result in the waiver of the defense. *Chavez v. Kitsch,* 70 N.M. 439, 374 P.2d 497 (1962). An affirmative defense is that state of facts provable by defendant which may bar plaintiff's right to recover. *Bendorf v. Volkswagenwerk Aktiengeselischaft,* 88 N.M. 355, 540 P.2d 835 (Ct.App.1975).

█ A trial court does not have the power *sua sponte* to amend a party's pleadings. *Branch v. Mays,* 89 N.M. 536, 554 P.2d 1297 (Ct.App.1976); *Pacheco v. Martinez.* A trial court may, however, allow a party to amend his pleadings to set up an affirmative defense. *Chavez v. Kitsch.* Similarly, even though a party has not expressly pled an affirmative defense nor moved to amend its answer to include an affirmative defense, as provided by NMSA 1978, Civ.P. Rule 15(b) (Repl.Pamp.1980), an issue may be otherwise raised. *See Terrill v. Western American Life Insurance Co.,* 85 N.M. 456, 513 P.2d 390 (1973). Where an issue in the nature of an affirmative defense is raised and litigated without objection and specifically ruled on by the trial court, defendant's failure to raise the issue as an affirmative defense or seek an amendment at trial does not present a viable issue on appeal. *Id. See also* J. Walden, *Civil Procedure in New Mexico,* Section 5(e)(2), at 125–26 (1973).

█ Wife did not object at trial to the introduction of evidence relating to the affirmative defenses found by the court. The trial court did not err in adopting findings based upon evidence admitted without objection. Wife further argues, however, that laches is not applicable under the facts herein. The elements of laches are: (1) defendant's invasion of plaintiff's rights; (2) delay in asserting plaintiff's rights; (3) a lack of knowledge in the defendant that plaintiff would assert her rights; and (4) injury or prejudice to defendant if the suit is not barred. *Baker v. Benedict,* 92 N.M. 283, 587 P.2d 430 (1978). She asserts that the evidence merely shows a lapse of time, without proof that the delay was unreasonable or resulted in any prejudice to husband. *See Butcher v. City of Albuquerque,* 95 N.M. 242, 620 P.2d 1267 (1980).

█ The passage of time is only one element of the defense of laches. Mere delay is insufficient to establish laches. *City of Roswell v. Mountain States Telephone & Telegraph Co.,* 78 F.2d 379 (10th Cir.1935); *C & H Construction & Paving Co. v. Citizens Bank,* 93 N.M. 150, 597 P.2d 1190 (Ct.App.1979). To establish the defense of laches, the evidence must show that the delay was unreasonable and that it prejudiced the defendant. *Id.* The application of the doctrine of laches depends upon the circumstances of each case. *City of Raton v. Vermejo Conservancy District,*

101 N.M. 95, 678 P.2d 1170 (1984). The doctrine of laches is disfavored and is applied only where a party is guilty of inexcusable neglect in enforcing her rights. *See, e.g., State ex rel. Department of Human Services v. Davis,* 99 N.M. 138, 654 P.2d 1038 (1982); *Butcher v. City of Albuquerque.* Viewed in a light most favorable to the ruling of the trial court, the evidence supports a finding of unreasonable delay and prejudice to husband as to the previously paid installments of military retirement.

Wife was aware that husband was receiving military retirement. She found out that she may have been entitled to share in the benefits in 1978, yet she delayed in filing suit until approximately five years later. Additionally, husband voluntarily paid more alimony to wife than required under the marital settlement. The court's finding that wife's claim for a portion of the military retirement benefits previously received by husband is barred by the statute of limitations and laches is supported by substantial evidence. *See Plaatje v. Plaatje,* 95 N.M. 789, 626 P.2d 1286 (1981).

In *Plaatje,* the court held that an action to divide military retirement benefits is subject to a four-year statute of limitations and that the statute runs from the date of each installment payment of military retirement. However, under *Plaatje,* the court's finding of laches herein only applies to past installments of military retirement.

Property acquired by either or both spouses during marriage is presumptively community property. *Stroshine v. Stroshine,* 98 N.M. 742, 652 P.2d 1193 (1982). If community property is undivided at the time of divorce, it is held as tenants in common following the divorce. *See Hickson v. Herrmann.*

The New Mexico Supreme Court has recently held that New Mexico community property law, which currently treats military disability retirement benefits as community property, is consonant with federal law in the Uniformed Services Former Spouse's Protection Act, 10 U.S.C. Section 1408(c)(1) (West 1983) (which provides that: "a court may treat disposable retired or

retainer pay payable to a member for periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court."). *Austin v. Austin,* 103 N.M. 457, 709 P.2d 179 (1985). The New Mexico Court of Appeals has also held that in allocating military retirement benefits upon divorce, the Act may be applied retroactively to June 25, 1981. *Koppenhaver v. Koppenhaver,* 101 N.M. 105, 678 P.2d 1180 (Ct.App.), *cert. denied,* 101 N.M. 11, 677 P.2d 624 (1984).

■ The trial court concluded that wife was barred from maintaining her action for military retirement benefits because of facts giving rise to the defense of waiver. On appeal, wife challenges the sufficiency of evidence to support a finding of waiver. We agree. Waiver is the intentional relinquishment of a known right. *Young v. Seven Bar Flying Service, Inc.,* 101 N.M. 545, 685 P.2d 953 (1984); *Wells Fargo Bank v. Dax,* 93 N.M. 737, 605 P.2d 245 (Ct.App.1979). The evidence was undisputed that wife did not know at the time of the divorce that she had a right to a share of the military retirement. Husband's attorney at the divorce was called to testify at trial herein and stated that he believed the retirement benefits belonged to husband and that wife's attorney was under a similar impression. The findings adopted by the trial court do not support a finding of a valid waiver by wife to the military retirement benefits.

## IV. FUTURE BENEFITS

■ Wife contends that the trial court's finding of laches, statute of limitations, and waiver is not applicable to military benefits received by husband which have accrued since the filing of her petition seeking division of the military retirement. We agree.

*Plaatje* held that the statute of limitations applicable to the receipt of payments for military retirement is a four-year statute and that it runs from the date of each installment of military retirement. *See* NMSA 1978, § 37-1-4. The right to receive each monthly installment accrued when each installment became due; thus,

wife's right to recover her portion of each installment commences to run from the time each installment is payable. *Id.* The statute of limitations would bar participation in those benefits which were paid and received by husband more than four years prior to the filing of wife's action herein.

After wife's initiation of the present suit, the doctrine of laches would only bar wife's right to a share of past due installments of military retirement benefits paid and received. The evidence, when construed in a light most favorable to the trial court's findings below, supports a finding of laches, as discussed under Point III, *supra.* Under the facts herein, however, neither laches nor waiver bar wife's right to recover a portion of retirement benefits paid subsequent to filing of this suit or benefits which may become payable in the future. *See* § 40-4-20.

## V. ATTORNEY FEES

■ The trial court denied wife an award of attorney fees at trial. Wife points out that the trial involved a one-half day preparation and briefing. Additionally, wife seeks allowance of attorney fees incident to her appeal herein.

Review of the record indicates little evidence concerning the financial status of the two parties. Husband has been receiving $772.00 per month in military retirement. He works for PCA, but has been periodically laid off due to company shutdowns. Both husband and wife have remarried.

Wife testified that before employing her present attorney, she had attempted several times to employ counsel. However, no attorney would take the case because she did not have sufficient funds for a retainer.

Determination of whether to grant an award of attorney fees or the amount of the award rests within the sound discretion of the trial court. *Burnside v. Burnside,* 85 N.M. 517, 514 P.2d 36 (1973); *see Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983). The trial court's discretion must be exercised with a view toward insuring a party with an efficient preparation and presentation of her case. *See Moore v. Moore,* 71

N.M. 495, 379 P.2d 784 (1963); *see also* NMSA 1978, § 40-4-7 (Repl.Pamp.1983). The trial court's ruling concerning the grant or denial of attorney fees will be reviewed only as to whether there has been an abuse of discretion. *Fitzgerald v. Fitzgerald,* 70 N.M. 11, 369 P.2d 398 (1962).

A number of factors enter into a decision concerning an award or denial of attorney fees, including the following: the nature and character of the litigation, the ability of counsel for the party, the amount involved, the importance of the litigation and the benefits derived therefrom. *Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976). As noted in *Allen v. Allen,* 98 N.M. 652, 655, 651 P.2d 1296, 1299 (1982), "[i]f there is economic disparity between two adverse parties * * * such that one party may be inhibited from preparing or presenting a claim, then the trial and appellate courts should be liberal in exercising their discretion to award attorney's fees to discourage any potential judicial oppression." In *Henderson v. Lekvold,* the supreme court emphasized the need for the trial court to consider the relative financial status of the parties and the ability of the parties to employ counsel. *See also Blake v. Blake,* 102 N.M. 354, 695 P.2d 838 (Ct. App.1985).

In light of our ruling, which reverses the trial court's denial of wife's portion of the PCA contingent rights and her portion of the military retirement installments paid since the filing of suit herein, we remand the issue of wife's right to attorney fees at trial to the district court for further consideration. Wife is awarded $2,000.00 for services of her attorney, plus costs, incident to this appeal.

The case is remanded to the district court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

WOOD and GARCIA, JJ., concur.