735 P.2d 1176

**William MICHALUK, Petitioner-Appellant and Cross-Appellee,**

v.

**Victor BURKE, Donna Burke-Taylor and Jeffery Burke, Surviving Children of Josephine E. Michaluk, Deceased, Respondent-Appellee and Cross-Appellant.**

**No. 8954.**

Court of Appeals of New Mexico.

March 19, 1987.

Martha A. Daly, Rothstein, Bailey, Bennett, Daly & Donatelli, Santa Fe, Stevan Douglas Looney, Albuquerque, for petitioner-appellant and cross-appellee.

Jeffery Burke, pro se.

Donna Burke-Taylor, pro se.

Victor Burke, pro se.

## OPINION

BIVINS, Judge.

In this divorce action, husband-petitioner (husband) appealed and wife-respondent (wife) cross-appealed. After entry of the divorce decree and final judgment, but before resolution by this court, wife died. We granted leave for the parties to file supplemental briefs regarding what effect wife's death had on the issues before us.

Husband raises two issues on appeal: (1) whether the trial court abused its discretion in awarding lump sum alimony of $35,000; and (2) whether the trial court abused its discretion in awarding wife attorney fees. In his supplemental brief, husband contends that wife's right to collect lump sum alimony abated upon her death. Husband also challenges the substitution of wife's children as parties to this appeal.

Wife's cross-appeal raises two issues: (1) whether the trial court erred in awarding property to husband as his sole and separate property, based on husband's oral testimony of its character; and (2) whether the trial court erred when it failed to make an ultimate finding of fact regarding when title to the property was acquired. Wife's children filed no supplemental brief. We affirm the trial court on all issues raised before wife's death. As to the issues raised in husband's supplemental brief, we hold that wife's death has no effect on the judgment entered below and that wife's children are proper parties to this appeal.

The parties married in 1968. At the time of divorce, the parties owned community property worth approximately $21,000, which they divided equally by agreement. When the final decree of divorce was en-

tered, wife was sixty-seven[1] years old, in poor health and unemployable. She had minimum assets and income. Based on these factors, the trial court found that wife was entitled to alimony and awarded $35,000 in lump sum alimony. The trial court found lump sum alimony appropriate because of wife's intent to leave the state to be near her children, and because the incompatibility between the parties made it unlikely that husband would continue to make periodic payments without further court proceedings, which neither could afford. The trial court awarded wife $2,000 in attorney fees and court costs.

Also in dispute was the status of a four-plex apartment building in Albuquerque, valued at $100,000. Husband claimed that he purchased the building as his separate property prior to their marriage; wife claimed that she was involved in the purchase of the property and helped manage it. The trial court found the four-plex to be husband's sole and separate property. A final decree of dissolution of marriage and judgment in the amount of $38,227.15, with interest at 15% per annum, were entered on November 6, 1985.

## LUMP SUM ALIMONY AWARD

Husband concedes that wife is entitled to alimony, but disputes the award of lump sum alimony in the amount of $35,000. In reviewing the trial court's award of alimony, we consider only whether the award was contrary to all reason. *Hodges v. Hodges*, 101 N.M. 67, 678 P.2d 695 (1984). We do not substitute our judgment for that of the trial court.

■ Factors to consider in determining whether to award alimony and, if awarded, the adequacy of the amount, include the spouse's needs, age, health, means available for support, the payor spouse's earning capacity, the duration of the marriage, and the amount of property owned by each party. *Blake v. Blake*, 102 N.M. 354, 695 P.2d 838 (Ct.App.1985). The trial court found that wife was aged, in ill health, unemployable and had minimal as-

sets. Also, the marriage lasted seventeen years and husband was leaving the marriage with over $110,000 in assets. We agree with the parties that alimony was appropriate.

The evidence indicated that husband had failed to pay monthly obligations to his first wife, that his current wife wanted to leave New Mexico, that husband had spent over $1,000 in food and entertainment expenses over a six-week period, that wife had long-term medical and living expenses, that husband would leave the marriage with over $110,000 of assets while wife had about $10,000 of assets, and that husband and wife were unable to communicate with each other to any degree. Given these factors and the inferences drawn from them, we cannot say that the trial court abused its discretion in awarding lump sum alimony to wife.

■ Husband urges this court to adopt a rule that trial courts should routinely award periodic alimony and reserve the award of lump sum alimony only for compelling circumstances. Our statutes do not so provide and we decline to adopt such a rule. NMSA 1978, Section 40–4–7(B)(1) (Repl.1986) provides the trial court the option of awarding "a reasonable sum of money * * * either in a single sum, or in installments, as alimony, as under the circumstances of the case may seem just and proper[.]" Section 40–4–7 states no preference for one form of alimony over the other, and we will not interfere with the trial court's statutorily authorized discretion. Statutes should be given effect as written, and where free from ambiguity, there is no room for construction. *State v. Lujan*, 103 N.M. 667, 712 P.2d 13 (Ct.App. 1985).

■ Husband also argues that the amount of alimony was excessive and that he should not be forced to pay the lump sum from his separate property. We disagree. The trial court's discretion to award alimony is limited only to the grant

---

**1.** The trial court inadvertently found that wife was sixty-five years old, but her death certificate and deposition indicate wife was sixty-seven.

of a reasonable sum, given the facts of the particular case. *Redman v. Redman,* 64 N.M. 339, 328 P.2d 595 (1958). Given wife's needs and her lack of assets, we find the trial court's award reasonable. *See Redman v. Redman; Golden v. Golden,* 41 N.M. 356, 68 P.2d 928 (1937).

In so holding, we have considered husband's argument that the trial court's finding reflects little regard for his earning capacity and future earnings as required. *Michelson v. Michelson,* 86 N.M. 107, 520 P.2d 263 (1974); *Blake v. Blake.* Husband points out that the trial court found that he is sixty-eight years old, unemployed and receives $392 monthly from social security. Since he depends upon his social security and net rentals for his livelihood, and it was an accepted fact at trial that he could not borrow the money to pay the lump sum alimony award, his only recourse is to sell the four-plex. Relying on *Ellsworth v. Ellsworth,* 97 N.M. 133, 637 P.2d 564 (1981), husband asserts he should not be required to sell his only asset, upon which this livelihood depends, to satisfy the alimony award.

Additionally, husband contends there is no evidence as to the amount necessary to meet wife's needs. We disagree. Wife projected $1,000 a month for living expenses, including medical bills. We note that the trial court awarded wife, pending the appeal and before her death, $250 a month plus rent-free occupancy at the four-plex if she returned to Albuquerque, and $425 a month if she did not return. Given the circumstances of wife's age, condition of health, and her needs, the sum of $425 a month does not appear unreasonable. Using that figure and applicable annuity tables, the resultant value of future alimony payments computed at five percent discount, compounded annually, comes to $34,-989.57.[2] Of course, a lower monthly sum or a higher discount rate would lower the present value. Nevertheless, the rough calculation, taking judicial notice of the tables discussed, demonstrates that the $35,-

000 figure can be supported when a modest monthly sum is projected.

■ The dilemma faced by the trial court prompted its comment that the award was not enough for wife and too much for husband. Nevertheless, the trial court fashioned, as best it could, a fair resolution. The fact that husband will have to sell the four-plex, while burdensome, should not leave him destitute. Assuming a sales price of $100,000, husband will still have approximately $65,000, less cost of sale, plus $10,000 in additional community property to invest. In addition, husband has his social security of $392 a month. Further, lump sum alimony, as opposed to monthly payments, would not likely have been awarded but for husband's poor track record with his first spouse, the acrimonious relationship with wife here, and his own equivocations about paying her alimony. That husband may have to sell his four-plex is due in part to his own actions. *Ellsworth* does not require a different result. That case concerns the liquidation of property by the recipient of alimony. Here, we are dealing with the sale of separate property by the payor to satisfy his obligation for alimony, which Section 40-4-7 authorizes.

■ As to husband's argument that his separate property should not be used to pay alimony, we point out that this assertion directly contradicts Section 40-4-7(B)(1), which allows the trial court to award "either party such a reasonable portion of the spouse's separate property" as alimony. *See also* NMSA 1978, § 40-4-12 (Repl.1986). New Mexico cases have stated that the trial court can award alimony from either the community property or separate property of a spouse. *Ridgway v. Ridgway,* 94 N.M. 345, 610 P.2d 749 (1980); *Harper v. Harper,* 54 N.M. 194, 217 P.2d 857 (1950); *Golden v. Golden.*

Even if the alimony award was higher than we might have awarded, *Bilbao v.*

---

**2.** In making this calculation, we used 5% discount based on NMSA 1978, Section 52-1-30(B) that was in effect for worker's compensation cases at the time of the final decree, but since repealed, the American Experience Mortality Table, NMSA Parallel Tables, Vol. 13 at 19, age 67 at 5%, and the Explanation of Use, Annuity Tables, Parallel Tables, Vol. 13 at 17.

*Bilbao,* 102 N.M. 406, 696 P.2d 494 (Ct. App.1985), or lower than we might have awarded, *Mattox v. Mattox,* 105 N.M. 479, 734 P.2d 259 (Ct.App.1987), we cannot say that the trial court abused its discretion by awarding $35,000 in lump sum alimony. Such an award was not contrary to all reason and is supported by the evidence.

STATUS OF ALIMONY AWARD AFTER WIFE'S DEATH

Husband raises an issue of first impression in New Mexico: whether the right to receive lump sum alimony terminates at the recipient's death. For a general discussion of this subject, *see* Annotation, *Effect of Death of Party to Divorce Proceeding Pending Appeal or Time Allowed for Appeal,* 33 A.L.R.4th 47 (1984). Husband urges us to abate the award of lump sum alimony because wife has died. He argues that the judgment for the lump sum award was stayed pending appeal and that this stay acted to prevent the vesting of the right to payment. Husband cites *Corliss v. Corliss,* 89 N.M. 235, 549 P.2d 1070 (1976), for the principle that the right to future installments of alimony becomes absolute and vested only upon becoming due.

■ In our case, unlike *Corliss,* wife has no right to *future* installments of alimony. She was awarded a lump sum, which we have upheld. This is different than a right to receive *future* payments of alimony. The trial court gave husband ninety days within which to pay the sum, and a judgment was issued on the date of the divorce decree. The fact that husband stayed the judgment does not affect its validity. A stay stops any future executions on the specific judgment appealed from, but it does not suspend the operation of the judgment as an estoppel or preclude the bringing of other actions. 7 J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 62.06 (2d ed.1985); *see also Higgins v. Higgins,* 204 Iowa 1312, 216 N.W. 693 (1927) (where a husband stayed execution on a judgment for alimony by filing a supersedeas bond, this did not have the effect of vacating the judgment, but only prevented its enforcement during the pendency of the appeal). We agree with this analysis. If we were to

follow husband's reasoning, the judgment in effect would not be final. If the judgment were not final, neither party could appeal. *Thornton v. Gamble,* 101 N.M. 764, 688 P.2d 1268 (Ct.App.1984).

■ Both parties state that lump sum alimony is modifiable based on Section 40-4-7(B)(2). We disagree. At first glance, it appears that Section 40-4-7(B)(2) permits modification of any alimony award. We must, however, construe sections of the statute together so that all parts are given effect. *Methola v. County of Eddy,* 95 N.M. 329, 622 P.2d 234 (1980). If we were to construe Section 40-4-7(B)(2) as allowing modification of lump sum alimony, the efficacy of lump sum alimony would be greatly diminished, if not eradicated. *Cummings v. Lockwood,* 84 Ariz. 335, 338-39, 327 P.2d 1012, 1015 (1958) summarizes our reasoning:

> The provisions of our statute, § 25-319, supra [modification of alimony], and § 25-321, supra [authorization to award alimony], should be construed together. We hold that § 25-321, relating to the power of the court from the time after entry of final judgment to alter, amend or revise the decree, relating to alimony, should be construed as impliedly excepting from its operation in this respect the right of the court to alter, amend or revise a decree of divorce where an award has been made of gross alimony or alimony in one sum payable in installments. If § 25-321 is not so construed then § 25-319 does not mean anything when it provides that alimony may be in one sum.

We view lump sum alimony as akin to accrued periodic alimony. As such, the authority to modify an alimony decree does not include the authority to make a retroactive modification of accrued and vested payments. *Hazelwood v. Hazelwood,* 89 N.M. 659, 556 P.2d 345 (1976); *Corliss v. Corliss.* Once installments become due, the right to those accrued installments of alimony becomes a fixed property right. *Cain v. Cain,* 91 N.M. 423, 575 P.2d 607 (1978). The judgment for accrued alimony becomes a nonmodifiable judgment, enti-

tled to full faith and credit in all states. *Id.*

We note that if neither party appealed and wife collected the $35,000, then died the next day, husband would have had no recourse. Whether we affirm an award of lump sum alimony before or after the recipient's death, the award must still be paid. Such is the nature of lump sum alimony; once awarded it cannot be modified. *Dooley v. Dooley*, 147 Ariz. 132, 708 P.2d 1323 (App.1985) (lump sum alimony payable in installments nonmodifiable); *Lyons v. Lyons*, 244 Ga. 619, 261 S.E.2d 395 (1979) (lump sum alimony nonmodifiable pursuant to statute); *Phillips v. Webster*, 611 S.W.2d 591 (Tenn.App.1980) (lump sum alimony, whether payable in one sum or in installments, nonmodifiable); *see also Hagerty v. Hagerty*, 222 Mich. 166, 192 N.W. 553 (1923) (alimony in gross awarded in lieu of property rights is not affected by death of either party). *Contra Sinn v. Sinn*, 696 P.2d 333 (Colo.1985) (en banc) (both periodic and lump sum alimony held modifiable). In the rare case such as this, where wife dies before actual receipt of the lump sum alimony award, her estate is entitled to collect it.

## ATTORNEY FEES

We have often stated that the award of attorney fees lies within the sound discretion of the trial court. *Berry v. Meadows*, 103 N.M. 761, 713 P.2d 1017 (Ct.App.1986). We will set aside an award of attorney fees only if the trial court abused its discretion. *Id.* In this case, wife had minimal assets and income. She incurred over $3,000 of attorney fees. Husband had more income and considerably more property. Considering the relative financial status of the parties and their ability to employ counsel, we find support for the trial court's award of $2,000 in attorney fees to wife. While we might have decided differently, we cannot deem the trial court's decision an abuse of discretion.

Wife also seeks attorney fees and costs for this appeal. Because of the disposition of this case upholding the lump sum alimony award, we decide that each party should pay his or her own attorney fees and costs for this appeal.

## APARTMENT BUILDING

Wife contends that a four-plex apartment building in Albuquerque should have been characterized as community property rather than husband's separate property. The standard of review is whether substantial evidence supported the trial court's decision. *Hodges v. Hodges.* We consider evidence in the light most favorable to the trial court's decision, drawing all reasonable inferences in favor of the judgment. *Id.* Applying this standard to the decision of the trial court in this case, we find no error.

Both parties agree that the property in question was purchased in March 1968, prior to the marriage in August 1968. Wife testified that husband's mother gave him the money for the property, that she, wife, put "not one penny" down towards the purchase of the property, that husband took care of the rental income and maintained the rental property. Wife also testified that she sometimes collected the rents, cleaned vacant apartments and put up vacancy signs when necessary. Husband testified that he put $1,000 of his separate money down on the property; borrowed $19,000 from his mother; had the deed made out in his mother's and sister's names; repaid the loan from proceeds from the rental units; and received a quitclaim deed from his sister for her share and later a deed from his mother for the whole property as his sole and separate property. Husband received these deeds during his marriage to wife. All arrangements to repay the loan were oral.

We are hindered somewhat in our review of the evidence because of the lack of documents in this case. We note that wife's docketing statement listed certain exhibits required for appeal, including a warranty deed, a bill of sale, quitclaim deeds, a promissory note and two lists of mortgage payments. These documents, however, were never transferred to this court. In fact, neither party requested them. *See* SCRA 1986, R. 12–212. Where the record on appeal is incomplete, the rul-

ing of the trial court is presumed to be supported by the evidence. *State ex rel. Alleman v. Shoats,* 101 N.M. 512, 684 P.2d 1177 (Ct.App.1984). We assume the trial court considered these omitted documents before characterizing the property.

It is well-settled that property takes its status as community or separate property at the time it is acquired, and is fixed by the manner of its acquisition. *Lucas v. Lucas,* 95 N.M. 283, 621 P.2d 500 (1980); NMSA 1978, § 40–3–8 (Repl.1986). Wife contends that husband did not "acquire" the property until he received legal title during the marriage. We disagree. Although decided under former law, we believe the rule in *Hollingsworth v. Hicks,* 57 N.M. 336, 258 P.2d 724 (1953), is still good law and applies here. In that case, husband contracted to purchase property prior to his marriage, but acquired legal title during the marriage. The court ruled that husband acquired an equitable right to the property when he signed the contract and the property was his separate property. Here, it appears that husband's mother received the original deed from the seller, and entered into an oral contract where husband would receive legal title upon repayment of the loan. Both parties were aware of the repayment schedule. Although we do not have the promissory note before us, the taped record indicates that one existed. Minimal community funds were used to repay this loan. From this evidence it appears that husband had equitable title to the property prior to his marriage and that the property was his separate property.

Wife contends that oral evidence should not be sufficient to support husband's claim. " 'The statute of frauds applies only to executory, as distinguished from executed, contracts, and if a contract otherwise within the statute is completely performed, it is thereby taken out of its operation.' " *Pattison Trust v. Bostian,* 90 N.M. 54, 56, 559 P.2d 842, 844 (Ct.App. 1976) (quoting *Mapel v. Starriett,* 28 N.M. 1, 5, 205 P. 726, 728 (1922)); *see also Prude v. Lewis,* 78 N.M. 256, 430 P.2d 753 (1967). Applying this standard to our case, and assuming the statute of frauds would oth-

erwise apply, we hold that husband's testimony and other evidence of the oral contract were properly before the trial court. The trial court weighs the evidence; we will not reweigh it. *Sanchez v. Homestake Mining Co.,* 102 N.M. 473, 697 P.2d 156 (Ct.App.1985). It also appears that the trial court had more than husband's oral testimony on which to base its decision. In any event, if the trial court disregarded all of husband's testimony regarding the oral contract, as husband's brief points out, the only basis for the transfer of property would appear to be that of a gift from his mother and sister to him. Pursuant to our statutes, this gift would be the separate property of husband. § 40–3–8(A)(4).

Wife contends that the trial court made no ultimate finding regarding when title to the property was acquired. Since we have already stated that the acquisition of legal title does not affect the nature of the property in this case, this argument is without merit. Substantial evidence supports the trial court's decision that the four-plex is husband's separate property.

## SUBSTITUTION OF CHILDREN AS PROPER PARTIES

Husband contends that the real parties in interest would be wife's devisees. At the time husband filed his supplemental brief, the children had not yet filed a copy of their mother's will naming them as devisees. The children's ex parte withdrawal of counsel and substitution of party pro se attaches a copy of the will. The will is sufficient to allow the children as substitutes in this proceeding. *See* NMSA 1978, § 39–3–20. *See also* SCRA 1986, Rule 12–301(B) for the current rule.

We affirm the judgment of the trial court and direct that the lump sum alimony award be paid to wife's estate. The parties shall pay their own costs and attorney fees on appeal.

IT IS SO ORDERED.

GARCIA and FRUMAN, JJ., concur.