775 P.2d 1315

**Jerry Rae COX,**
**Petitioner–Appellant/Cross–Appellee,**

v.

**Claude Herbert COX,**
**Respondent–Appellee/Cross–Appellant.**

**Nos. 10049, 10052.**

Court of Appeals of New Mexico.

May 4, 1989.

Certiorari Denied June 16, 1989.

Bruce P. Moore, Albuquerque and Randall S. Roberts, Roberts & Jolley,

Farmington, for petitioner-appellant/cross-appellee.

Michael L. Danoff, Albuquerque, for respondent-appellee/cross-appellant.

## OPINION

BIVINS, Chief Judge.

Wife appeals the trial court's valuation of the community interest in husband's accounting practice, the court's refusal to award fees for her expert witness, and the amount of attorney fees awarded her. Husband appeals the award of alimony, the order that he assume all community debts, and the award of attorney fees to wife. This case raises issues in applying *Hertz v. Hertz*, 99 N.M. 320, 657 P.2d 1169 (1983). In that case, the supreme court states that, if a professional spouse's stock in the corporation is subject to a restrictive agreement fixing the value of goodwill, such agreement controls in the absence of evidence that the stockholders have disregarded the same. The threshold question is whether there are any exceptions to the rule other than the one stated. We believe there are. Accordingly, we reverse and remand for a determination of the community interest in such goodwill. Because wife's issues regarding expert witness fees and her attorney fees are directly related to the goodwill issue, we reverse on those issues as well. We affirm on the issues husband raises.

## FACTS

Wife and husband were married in 1955. Husband is an accountant and a shareholder in the accounting firm of Cox–Keefer & Co. At the time of trial, he was fifty-nine years old and planned to retire in three years.

Husband and one of the other shareholders, Edwin Goff, worked for a number of years for an accounting firm named Fox & Co. In 1982, husband and Goff purchased the accounting practice from Fox. They paid $182,000 for the intangible assets, or goodwill, of the practice at the time they bought it. They raised the $182,000 by borrowing money from several sources and placing second mortgages on the Goff and Cox homes. It is undisputed that community assets constituted a portion of the collateral for the loans, and that community income, in the form of earnings of the accounting practice, was used to make payments on the loans. The accounting practice is currently paying off the remaining balance owed on the loans.

In 1984, Goff, husband, and Roy Keefer incorporated the practice and became shareholders in the corporation. Less than a year later, the shareholders began discussing a shareholders' agreement containing all of the provisions that eventually became part of the agreement at issue in this case. That agreement is dated July 1, 1986, but was not signed by all of the shareholders until early 1987. The signing was simply a ratification of something that had been discussed and agreed to earlier. All of the shareholders testified that the shareholders' agreement had nothing to do with husband's divorce.

The shareholders' agreement provides that upon the death, disability, bankruptcy, or retirement of any shareholder, or upon the cessation of employment of any shareholder, the corporation shall purchase that shareholder's shares in the corporation. The value of the shares shall be the book value of the shares as of the last day of the fiscal year preceding the occurrence of the sale contingency. The book value shall not include any amount for goodwill. All of the shareholders testified that they are bound by the agreement. Mr. Goff did testify that he felt some type of retirement would be paid to him, apparently in lieu of the goodwill, but Mr. Keefer testified that the retirement agreement never became a reality. Husband testified that when he retires in three years he will sell his shares at book value. He voiced no objection when the trial court asked if he would be willing to postpone division of the community interest in the practice until he retired, at which time the sale price of the shares

could be determined exactly. The trial court ruled that under the evidence presented, the shareholders' agreement was controlling on the valuation issue, because the court could look only at whether the shareholders are disregarding the agreement. The trial court made no award for the intangible assets of the accounting practice. Wife's expert had valued the community's share of those assets at between $109,200 and $171,096.

### 1. *Wife's Appeal*

■ (a) *Valuation of Goodwill:* The trial court found: "16. Cox–Keefer & Company has a shareholder's [sic] agreement which values goodwill at nothing and restricts the sale price of any shareholder's interest to book value at the end of the preceding fiscal year." Based on that finding, the trial court concluded that the value of husband's share in Cox–Keefer & Company is fixed by the terms of the shareholders' agreement. In so concluding, the trial court apparently read *Hertz* as holding that in all cases where there is a shareholders' agreement valuing goodwill, the non-shareholder spouse is bound to the same terms of the agreement which affect the shareholder spouse. We do not read *Hertz* that narrowly.

In *Hertz*, the husband was a shareholder in a law firm of over fifty persons that had been in existence for thirteen years before he became employed and for seventeen years before the husband became a shareholder in the firm. In its shareholders' agreement, the law firm specifically valued goodwill and other intangible assets at $1.00. Throughout the existence of the law firm, there had been over 150 purchases and sales of its stock upon a cash accrual basis with no amount paid or reduced for goodwill. In *Hertz* no community assets were used to purchase the law firm's goodwill.

The supreme court in *Hertz* found that the district court erred in disregarding the stock restriction agreement, holding that "if the professional spouse's stock in the corporation is subject to restrictive stock agreements and if the value of goodwill is fixed by those shareholder agreements, then absent evidence that the stockholders have disregarded this amount, the district court cannot determine a 'goodwill' value above that amount." *Id.* at 326, 657 P.2d at 1175. The question we must decide is whether the *Hertz* rule applies to all situations in which there is a stock restriction agreement.

While we recognize that *Hertz* can be read, as the trial court in this case read it, to apply to all situations where there is a shareholders' valuation agreement that restricts the value of goodwill, we believe the correct reading is not so restrictive. In its discussion, the *Hertz* court recognized that goodwill in a professional association may exist and represent an item of community property that should be divided at the time of dissolution of the marriage. *See Hurley v. Hurley,* 94 N.M. 641, 615 P.2d 256 (1980). The supreme court in *Hertz* distinguished *Hurley* because in that case there was no stock subscription agreement that valued goodwill. In *Hertz* there was. Nevertheless, the supreme court, in discussing the factors to be considered when determining professional goodwill, said that each case must be determined on its own particular facts and circumstances. 99 N.M. at 326, 657 P.2d at 1175.

When we examine the facts and circumstances of the case before us in light of *Hertz*, we find sufficient distinctions to make the *Hertz* rule inapplicable to this case. First, in *Hertz* the shareholders' valuation agreement had apparently been in existence for a number of years and had a history of over 150 transactions in which the restriction had been honored. In the case before us, the agreement is dated July 1, 1986, twenty-nine days after wife filed her petition for dissolution of the marriage, and was not signed by all the shareholders until early 1987. Further, there has been no record of any transactions since the

agreement was made. Second, in *Hertz* the shareholder spouse apparently paid nothing into the law firm for the goodwill. In the case before us, husband and Goff paid $182,000 for the goodwill, encumbering their respective homes with second mortgages to secure payment of the loans made to purchase that asset. Third, while it may be unlikely that a fifty-member law firm would be sold, such is not the case with a smaller professional firm such as the one in this case. Husband and Goff purchased the accounting practice from Cox in 1982, only four years prior to the making of the agreement and the filing of the divorce petition in this case. Given the manner in which the acquisition was made, there is no reason to believe that if the present shareholders had an attractive offer from a third party, or otherwise desired to sell the practice, they would not do so. In that event, husband and the other shareholders would undoubtedly realize value for the goodwill. If we were to apply *Hertz* to this case, wife would be deprived of her community interest in that asset.

Wife argues that the principles of community property are frustrated by strict adherence to the agreement. We would be inclined to agree with this argument if we read *Hertz* as requiring absolute adherence in all cases. We do not. We view *Hertz* as a decision based on its own facts and circumstances. It was those facts and circumstances that relegated the parties to the value assigned in the shareholders' agreement. Such is not the case here. We do not believe the supreme court intended to adopt a rule that would allow married couples to invest in a professional association without protecting the right of the non-shareholder spouse in the event of dissolution of that marriage. The underlying rationale for *Hertz* was the supreme court's concern over the "disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value." *Id.*, 99 N.M. at 325,

657 P.2d at 1174 (quoting *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343, 355 (1981) (footnote omitted)). It would be equally inequitable and disturbing to permit the shareholder spouse to retain the entire community interest in the goodwill by simply entering into a restrictive shareholders' agreement and then later realizing the value upon resale of the professional association, change in the agreement, or otherwise. We do not believe the supreme court intended that result.

Having determined that goodwill may be considered in this case, we address the question of how it should be paid. Husband could be required to pay wife her share of a current value, *see* Comment, *Identifying, Valuing, and Dividing Professional Goodwill as Community Property at Dissolution of the Marital Community*, 56 Tul.L.Rev. 313, at 324–30 (1981). Or, goodwill value could be treated the same as pension benefits, that is, to be paid in the future as and when it is actually received. *See* I. Lurvey, *Professional Goodwill on Marital Dissolution: Is It Property or Another Name for Alimony?*, 52 Cal.St.B.J. 27, at 84–85 (1977). We believe the latter approach is more equitable and one that finds support under our own case law. *Cf. Schweitzer v. Burch*, 103 N.M. 612, 711 P.2d 889 (1985) (trial court must divide community property retirement benefits on a "pay as it comes in" basis). Lurvey suggests that treating goodwill the same as pension benefits precludes having the professional spouse pay a lump sum at the time of the dissolution for goodwill which may never actually be received. It prevents a "hypothetical forced sale" of the business. We believe this approach comports with *Hertz*. If husband never realizes any benefits for the goodwill, then neither will wife.

We recognize there may be other questions that will have to be answered. For example, assuming the trial court values the goodwill, how will the court enforce that award later if and when husband receives the benefit? Should the trial court

retain jurisdiction, or should wife initiate new proceedings? *See* NMSA 1978, § 40–4–20 (Repl.1986) (allowing suit for division and distribution of property not divided on dissolution of marriage). What if any benefits received by husband should take a different form (Goff thought he would be paid for his interest in goodwill through some type of retirement)? Should the final decree in this proceeding require husband to inform wife and the trial court of any change with respect to the stock or his position with the firm? If husband should receive a benefit for goodwill that is less than the value given at the dissolution of the marriage, how should this be handled?

We do not think it necessary to address these or other questions that may arise in light of this opinion. We think it best to leave to the trial court's discretion the manner of fashioning a proper resolution.

Therefore, we set aside the judgment and remand for reconsideration of the value of goodwill in the accounting practice, consistent with this opinion. In reaching this result, we have not modified or refused to follow the rule of *Hertz.* In fact, we believe a careful reading of that case permits and even mandates the approach we take under the facts of this case.

(b) *Refusal to Award Expert Fees; Attorney Fees:* Wife argues that the trial court impermissibly considered her lack of success on the goodwill issue in refusing to award fees for her expert witness. As wife argues, expert witness fees as well as attorney fees may be awarded in domestic relations cases. *See Christiansen v. Christiansen,* 100 N.M. 102, 666 P.2d 781 (1983). Such an award is discretionary with the trial court. *Id.* In awarding attorney fees in a domestic relations case, the trial court may consider the benefits derived from the litigation. *See Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976) (discussing factors to be considered in awarding attorney fees, including the benefits derived from the litigation); *Blake*

*v. Blake,* 102 N.M. 354, 695 P.2d 838 (Ct. App.1985) (considering the relative success in the appeal together with wife's resources, award of appellate attorney fees made). Since expert witness fees are analogous to attorney fees, in that they assist in the efficient preparation of a case, the standards for awarding such fees should be analogous to the standards for attorney fee awards. Because we remand on the goodwill issue, which appears to have been the basis for denying expert witness fees, we likewise reverse on the refusal to award expert witness fees. On remand the court may consider such fees in accordance with the above discussion.

Wife contends that, if she is successful on either of the foregoing issues, the amount of attorney fees awarded by the trial court should be reconsidered. For the same reasons mentioned above, the trial court may on remand take into consideration wife's relative success on the goodwill issue and reassess her attorney fees.

As we have noted, a party's success on appeal is one factor to be considered when awarding attorney fees. *Blake v. Blake.* Considering that the main issue appealed by wife was the goodwill issue, on which she succeeded, the trial court should on remand include an appropriate amount for her attorney fees for this appeal.

## 2. Husband's Appeal

(a) *Alimony:* Husband argues that he should not have to pay $500 per month in alimony for three years. He concedes that the decision to award alimony, the amount of alimony awarded, and the length of time over which the alimony is to be paid, are discretionary with the trial court. We will review the award of alimony only to determine whether the trial court's award was contrary to all reason. *See Michaluk v. Burke,* 105 N.M. 670, 735 P.2d 1176 (Ct.App.1987). We note that husband himself requested findings of fact and conclusions of law containing provision for alimony in the amount of $300 per month for three years. Therefore, we do not review the award to determine whether

alimony should not have been awarded at all; we review it only to determine whether the amount awarded was contrary to all reason. *See Platero v. Jones,* 83 N.M. 261, 490 P.2d 1234 (Ct.App.1971) (party cannot complain on appeal because the trial court made findings he requested); *cf. Proper v. Mowry,* 90 N.M. 710, 568 P.2d 236 (Ct.App. 1977) (where plaintiff's requested instructions erroneously stated the law, plaintiff could not raise error on appeal).

Once the need for alimony is established, the trial court must consider the following factors in making an award of alimony: the duration of the marriage; the spouse's needs, age, health, and earning capacity; the other spouse's earning capacity; and the amount of property each party owns. *Hertz v. Hertz.* The trial court may also consider the parties' previous lifestyle in making an award of alimony. *See Blake v. Blake.* Wife in this case established her need for alimony by showing that her monthly expenses greatly exceeded the net amount she earned from her employment. Although some of her expenses were clearly expenses of the parties' youngest child, many of them were fixed expenses that would be the same whether she lived alone in the house or with someone else. Wife was in her early fifties at the time of the divorce, had no college degree, and had reached her maximum expected earning capacity for the area in which she lives. The parties had been married for approximately thirty years at the time of divorce. In addition, husband's earning capacity was two and one-half to three times that of wife's, and upon divorce wife inevitably would have to simplify her standard of living in comparison with that made possible by husband's high income during the marriage.

It is important to note that a significant amount of the valuable community property awarded to wife was in the form of retirement plan accounts. These funds are not available to meet her current expenses, unless she is forced to dispose of them and accept a penalty in so doing. She was awarded an account receivable that provides an income of $300 per month. Addition of that income to her monthly income of approximately $800 still leaves a shortfall of about $400 per month. Considering all of the above factors and the facts that wife would probably have to pay an increase in rent once she left the parties' home after a year, that the general trend in cost of living is upward, and that wife had nonrecurring expenses of $3,600 to pay at the time of the divorce, we cannot say that the trial court abused its discretion in awarding wife $500 per month for a limited time.

■ (b) *Allocation of Community Debts:* Husband complains that he was ordered to assume all of the community debts. Husband invited this error, if it was error, in his requested findings and conclusions. He submitted conclusions specifically allocating certain community assets between the parties, and allocating all of the community debts to himself. The trial court's conclusion allocating all the debts to husband exactly followed the language of husband's requested conclusion. In addition, the trial court's conclusions followed the proposed allocation of property in most respects. The only significant differences are that wife was awarded the HR–10 plan, worth $38,000, and was not awarded the $2,650 in cash, while husband was awarded the $25,000 interest in Desert Land Co., the $7,500 San Juan River Estates lot, and the $500 Pontiac, all of which he had proposed be awarded to wife. The court's award of these significant assets gave wife $2,350 more in assets than she would have received under husband's proposed distribution. This amount is de minimus when compared to the large total amount of property awarded in the decree. Since the court did not alter to any significant degree the property division proposed by husband, the court was entitled to rely in its decision on husband's proposed assumption of all community debts. *Cf. Proper v. Mowry* (invited error will not be the basis for reversal on appeal); *Platero v. Jones.*

**604**

(c) *Attorney Fees Award:* Husband argues that the trial court erred in awarding wife $4,000 in attorney fees. The decision to award attorney fees and the amount awarded are both discretionary with the trial court, and an award of such fees will not be disturbed absent abuse of the court's discretion. *Berry v. Meadows,* 103 N.M. 761, 713 P.2d 1017 (Ct.App.1986). The court's discretion must be exercised with an eye toward insuring a party efficient preparation and presentation of the case. *Id.* As we pointed out earlier, although the total amount of assets awarded to wife in this case was fairly large, over $45,000 of that amount was in the form of retirement accounts. Wife should not be required to liquidate those accounts to pay for the preparation of this case. In addition, another $30,000 of the assets was in the form of a loan balance that produces an income of $300 per month, but cannot be liquidated to pay attorney fees without depriving wife of income she needs to meet her monthly expenses. Finally, most of the other assets awarded to wife were items such as furniture and motor vehicles. The only community asset reasonably available to wife for paying fees appears to be the cash value of the life insurance policy, or approximately $8,000. In addition, as we also pointed out earlier, the difference between the parties' earning potential in this case is great. Considering all of these factors, we find no abuse of discretion in the trial court's award of attorney fees in the amount of $4,000 to wife.

In affirming the award of attorney fees in the amount of $4,000 to wife, we have answered husband's challenge. This does not preclude the trial court from reassessing that award based upon wife's success on the goodwill issue, both at the trial level and on appeal, as heretofore discussed.

CONCLUSION

We set aside that portion of the judgment denying wife any interest in the goodwill of the accounting practice, and remand for consideration of that asset consistent with this opinion. We also authorize the trial court to award wife's expert witness fees incurred in connection with that issue, and also to reassess her attorney fees award below and on appeal. We affirm the trial court on all other grounds. Wife shall recover her costs and expenses on appeal, together with attorney fees to be awarded by the trial court on remand.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.